ASA H. WATERS et al. *vs.* JAMES M. QUIMBY et al.

1. The nineteenth section of the act to authorize the establishment of manufacturing companies (*Nix. Dig.* 456) is in full force, and not void for want of purpose or object.

Waters v. Quimby.

**2.** The requirement of a certificate within thirty days after payment of the last installment of capital stock is satisfied by a certificate made within thirty days after the officers have decided that the capital is paid in.

**3.** In an action against the officers upon the thirtieth section, founded on the falsehood of a certificate made, sworn to, and recorded under the nineteenth section, they are precluded from alleging in defence that such certificate was false, and therefore unnecesary, and not in pursuance of the act.

**4.** A certificate under the nineteenth section is in pursuance of the provisions of the act, and if false, subjects those signing it to the payment of all the debts the company contracts while they were stockholders or officers.

**5.** The penalties of the twenty-first section are prospective, those of the thirtieth retrospective; the former, payment of debts accruing after the default; the latter, payment of debts accruing before.

This cause came before the court on a motion in arrest of judgment on the following state of the case.

The declaration is entitled as of the term of November, 1856, and complains " for that whereas James M. Quimby, William Wright, Gamaliel Gay, Alonzo D. Perry, Andrew Lamsassena, Theodore P. Howell, Roswell Van Buskirk, Daniel Price, David M. Fitzgerald, John Hartshorne, Samuel Meeker, and Michael Gibney, on the 15th day of July, A. D. 1853, at Newark, in said county, associated themselves together in a company for the purpose of manufacturing and selling fire-arms, and became incorporated under the act of the State of New Jersey entitled, " An act to authorize the establishment and to prescribe the duties of companies for manufacturing and other purposes," and did record a certificate of such association in the office of the clerk of the county of Essex, and did therein certify that the name assumed to designate such company, and to be used in its business and dealings, was the Perry Patent Arm Company, and did also therein further certify and make known that the capital stock of said company was $300,000, divided into 3000 shares, of $100 each, and to commence business with a capital stock of $288,000, divided into 2880 shares, of $100 each; and did, by said certificate, further make known that the said defendant, James M. Quimby, was

a stockholder in said company to the amount of 480 shares; the said John Hartshorne to the amount of 80 shares; the said Samuel Meeker to the amount of 160 shares; the said Daniel Price 80 shares; the said Alonzo D. Perry 480 shares, and the said Michael Gibney 360 shares; and did, in all other things, comply with the provisions of said act under which said company was formed: and whereas the said the Perry Patent Arm Company, while the said defendants were stockholders and officers of said company, became indebted to the plaintiffs in the amount of two drafts, or bills of exchange, both bearing date the 17th day of February, A. D. 1854, drawn by one Amos R. Carter upon the said the Perry Patent Arm' Company, one payable five months after date, to the order of William Glaze & Co., for $1402.37, and the other payable six months after date, to the order of the said William Glaze & Co., for $1410.36, which said drafts or bills of exchange were endorsed and delivered by the said payees to the plaintiffs, and were accepted by the said the Perry Patent Arm Company, and were afterwards, when due and payable, duly presented to the said acceptors for payment, and the payment of the same was by them refused; and whereas afterwards, on the 16th day of September, A. D. 1854, the said plaintiffs prosecuted their suit or action, in the Circuit Court in the county of Essex, against the said Perry Patent Arm Company for the recovery of the money due and owing upon the said two bills of exchange; and such proceedings were thereupon had, that afterwards, on the 27th day of September, A. D. 1855, the said plaintiffs, by the consideration and judgment of the said court, recovered against the said the Perry Patent Arm Company the sum of $3009.16 damages, and $47.49 costs of suit, as by the record, &c., appears, which judgment still remains in full force, &c., not satisfied, &c. And whereas the' said James M. Quimby, as president and director of the said Perry Patent Arm Company, John Hartshorne, as secretary and treasurer there-

of, and the said Samuel Meeker, Daniel Price, Alonzo D. Perry, and Michael Gibney, as directors of said company, and a majority of the same, on the 9th day of January, A. D. 1855, at Newark aforesaid, did, within thirty days after the payment of the last installment of the capital stock so fixed upon as the amount of capital stock of the said company, with which they would commence business, make a certificate, and did sign and swear to the same, and, within the said thirty days, record the said certificate in a book kept for that purpose in the office of the clerk of the county of Essex, and did also publish the said certificate in a newspaper circulating in the said county of Essex, as required in said act, by which certificate the said defendants did, under oath, certify and make known that the amount of capital stock of the said the Perry Patent Arm Company, with which, by the original certificate of incorporation thereof it was declared that the said company would commence business, was $288,000, divided into 2880 shares, of $100 each, and that the whole amount of said capital so fixed upon had been paid into the treasury of the said company *in cash*, the last payment thereof having been made on the twenty-ninth day of December, 1854, and did in *all things comply with the said act* in making and giving publicity to the said certificate. And the said plaintiffs aver, and in fact say, that the said capital stock of $288,000 so fixed upon as stated in the said certificate, was not paid into the treasury of said company *in cash*, as in the said certificate and publication thereof is certified and made known, and as required by the said act under which the said company was incorporated ; and that the said *certificate and the public notice* given by the same are false and untrue in the said material representation thereof, by means whereof the said defendants, as stockholders and officers of said company as aforesaid, became liable to the said plaintiffs to pay to them the said debt so due and owing to them by the said the Perry Patent Arm Company as aforesaid ; and

whereby an action hath accrued to the plaintiffs to demand and have of the said defendants the said sum of money so due and owing to the plaintiffs as aforesaid, according to the form, force, and effect of the said act hereinbefore mentioned, and which the said defendants have neglected and refused to pay, to the damage of the plaintiffs of $7000, *et inde producit sectam*," &c.

To this declaration the defendants pleaded not guilty.

On the trial at the Essex Circuit, the jury rendered a verdict of guilty, and assessed the plaintiffs' damages at $3350.85. The *postea* was returned to this court, and a rule for judgment *nisi* was entered.

The defendants moved to arrest the judgment on the following grounds :

*First.* Because the debt or claim of the plaintiffs, by reason of which they claim to recover against the defendants in this case, accrued against the Perry Patent Arm Company before the payment of the last installment of the capital stock of said company, and before the certificate thereof was sworn to by the defendants, or filed or published, as by the act is required.

*Second.* Because, in other respects, the record and proceedings in this cause are not sufficient in the law to authorize the recovery of a judgment against the defendants therein.

Argued at November Term, 1858, before the CHIEF JUSTICE, and Justices VREDENBURGH and WHELPLEY.

*F. T. Frelinghuysen* and *J. P. Bradley*, for the motion.

*Hubbell* and *W. Pennington, contra.*

WHELPLEY, J. The plaintiffs had a verdict in this case at the Essex Circuit, for $3350.85, and this is a motion in arrest of judgment. The action was against the defendants, as officers of the Perry Patent Arm Company, for

making and publishing an untrue certificate to comply with the provisions of the act entitled, "An act to authorize the establishment and to prescribe the duties of companies for manufacturing and other purposes," untrue in stating that the capital stock of $288,000, fixed upon as the amount with which to commence business, was paid into the treasury of the company in cash.

The declaration states that defendants, on the 15th July, 1853, formed a company under the act, filed a certificate in the Essex county clerk's office, declaring their name and objects, fixing the capital at $300,000, and the amount wherewith to commence business at $288,000, &c.; that the company, while the defendants were stockholders and officers of the company, on the 17th day of February, 1854, became indebted to the plaintiffs upon two bills of exchange, drawn upon and accepted by the company; that the plaintiffs, the bills having been protested for non-payment, sued the company upon them, and, on the 27th day of September, 1855, obtained a judgment for $3009.16 damages, besides costs; that Quimby, as president, Hartshorne, as secretary and treasurer, and the other defendants, as directors, being a majority thereof, on the 9th January, 1855, and within thirty days after payment of the last installment of $288,000, capital fixed to commence business with, made, signed, swore to, recorded, and published, in a newspaper, &c., a certificate that the $288,000 fixed upon to commence business with, had been paid into the treasury in cash, the last payment having been made on the 29th December, 1854, and did in all things comply with the said act in making and giving publicity to the said certificate.

The plaintiffs then aver that the payment was not made in cash, and that the certificate and public notice given were false and untrue in the material representations thereof.

Upon this state of facts appearing by the record, are the plaintiffs entitled to judgment on their verdict?

VOL. III.                    T

If the action can be maintained, it must be either under the twenty-first or thirtieth section of the act, or both.  *Nix. Dig.* 458, 460.

The certificate in question was made to comply with the provisions of the nineteenth section of the act.   That provides that such a certificate as was made, as to form, shall be made within thirty days after payment of the last installment of the capital stock fixed and limited by the company.   The next section provides for a like certificate in case of an increase of capital stock.

The twenty-first section provides, that if any of the said officers shall neglect or refuse to perform the duties required of them in the two preceding sections, or the certificate made by them shall be untrue, they shall be jointly and severally liable for all debts of the company contracted after the expiration of the said thirty days, and before the said certificate shall be recorded.

It was urged that the judgment must be arrested, because the certificate is not required to be made until thirty days after the payment of the last installment of the capital stock, and that, if the last installment was not in fact paid, the certificate was unnecessary, and therefore not in pursuance of the provisions of the act; that if it was paid, the certificate could not possibly be false.

It is perfectly obvious that the legislature contemplated two modes of payment, one in cash, and the other in something considered by the officers as equivalent to cash, although in fact not cash; that they thought the officers might treat the capital as actually paid in when there was nothing in the treasury but checks and promissory notes and deeds for property without substantial value.   In order to reach this difficulty, and prevent such a decision, they in effect provided that the officers might commence business as a corporation whenever the capital was paid in, leaving to them to decide, at their peril, when that time had arrived, and requiring them to make the certificate within thirty days thereafter, that is, within thirty

Waters v. Quimby.

days after their decision that the capital fixed to commence business with was paid in cash.

The legislature has said to those desiring to avail themselves of this act, associate yourselves under this act, fix the amount of capital upon which you intend to commence business, commence your business whenever this capital is paid in cash—we leave you to decide when this is done; but, in order to secure a truthful decision, we require you, within thirty days, to swear to the truth of what you have decided, record it, and publish it to the world; and if your affidavit is false, you shall incur a personal liability.

Surely it does not lie in the mouths of these officers to say that the affidavit which they have solemnly and deliberately made cannot by possibility be false because it was false. The argument is this: we are not required to swear the capital was paid in cash until thirty days after it is paid in cash; it never was paid in cash, our affidavit was false, therefore it is a nullity. If our affidavit had been true, it would have been strictly in pursuance of the provisions of the act, but as it is false, it is not an affidavit under the act. Such a construction is hypercritical. *Qui hæret in litera, hæret in cortice.*

The defendants should not be permitted to allege that their solemn act, avowedly done to comply with the express provisions of an act of the legislature, was not made in pursuance of its provisions, and that no legal liability can grow out of it, because that which the act requires to be true was in fact false.

By the act of recording and publishing the certificate, the defendants, on the issue as to its truth or falsehood, are precluded from alleging that the time for doing it had not arrived, inasmuch as, if true, it would have been a strict compliance with the terms of the section.

By the express terms of the twenty-first section, the officers are made liable on two contingencies.

*First.* Upon failure to make, record and publish the certificate within thirty days, sworn to as prescribed.

*Second.* If filed, sworn to, and recorded, as required, they are also liable if the certificate be untrue.

In either event, the liability is for all the debts of the company contracted between the expiration of the time and the recording of the certificate required by the act.

The record shows that the debt sought to be charged upon defendants was contracted on the 17th February, 1854, and that the last installment was paid on the 29th December thereafter. The debt was not contracted after the expiration of the thirty days, consequently the defendants are not liable for it under the twenty-first section.

It was argued that the court ought to declare the nineteenth section inoperative, because as it stood, taken in connection with the twenty-first section, it had no object. This argument will be noticed hereafter in discussing another branch of the case.

If the defendants are liable, it must be under the thirtieth section of the act, which is, that if any certificate made, or any public notice given by the officers of any company, in pursuance of the provisions of this act, shall be false in any material representation, all the officers who shall have signed the same shall be jointly and severally liable for all the debts of the company contracted while they were stockholders or officers thereof.

Upon this section two questions arise.

*First.* Was the certificate in question made and published in pursuance of the operative provisions of the act?

*Second.* Is a certificate under the nineteenth section of the act within the purview of the thirtieth section, or are such certificates required under a particular penalty specially provided, to the exclusion of the penalties of the thirtieth section?

The first question lies at the bottom of the whole case, for the certificate, stated in the record to have been false, was made under that section; and if that section is inoperative for want of an object, this action will not lie.

This brings us to the consideration of the question,

what certificate does the nineteenth section require? Are its provisions satisfied by the filing of a certificate correct in form, duly sworn to and recorded, although false in fact? What is its object?

It requires a certificate stating the amount of the capital fixed and paid in, in cash. Suppose the section had stopped here, could it be said that a certificate which did not truly state that amount did state it?

If the words had been "a certificate truly stating the amount of the capital so fixed and paid in," the legislative intent would not have been more clearly expressed. The design of the legislature to require a true statement, is only more clearly apparent by requiring the statement to be sworn to. A false statement is no compliance with the terms of the act.

It would seem clear, if the words contained in the twenty-first section had not been used, requiring the certificate to be true, that the liability of the officers under that section would commence after the expiration of thirty days, and continue until such a certificate, that is, a true certificate, had been recorded.

The mode in which the words "or the certificate made by them shall be untrue," are thrown into the section, create an incongruity more apparent than real; a close examination of the section brings it to light, and a closer clears it up.

A paraphrase of the sentence seems to relieve the whole difficulty. If any of the officers shall altogether neglect or refuse to perform the duties required of them in the two preceding sections, by failing to make, swear to and record *any* certificate, or if the certificate *made* by them shall not be true; they shall be jointly and severally liable for all the debts of the company contracted after the expiration of the thirty days, and before such (true) certificate shall be recorded. If the nineteenth section requires a true certificate, the unnecessary repetition of that con-

dition in the twenty-first section ought not to change the construction.

One of the points made by counsel was, that the act under consideration was substituted for that of February 25th, 1846, (*Rev. Stat.* 142) upon the same subject, many of the provisions of which are identical with those of this act; that the former act contained a section, immediately preceding the section corresponding to the nineteenth of this act, making stockholders of every company formed under it liable for all the debts contracted by it, until the capital, from time to time fixed and limited, was paid in, and a certificate made and recorded in the clerk's office, and published as prescribed in the next following section, which corresponds to the section of this act requiring the certificate. It was insisted that the sole object of the provision was to terminate the responsibility of the stockholders created by the preceding section; that the twentieth section of the act of 1846, and nineteenth of this, should have the same construction; that the individual liability clause having been omitted in his act the object of the certificate no longer exists, and, therefore, the section requiring it is a dead letter, left by mistake in revising the act.

Assuming the principle to be correct, that when an act is repealed, and its place supplied by another containing many of the same provisions and sections, but materially altered in its main features, the sections to be found in the new act in different connections, are to have the same construction as when read in their old connections, which seems not to be sound, the argument has more ingenuity than force. It commences with a false premise. It was not the *sole* object of the nineteenth section of the act of 1846 to terminate the liability of the stockholders, nor of the twenty-second, to compel the making of the statement to effect that purpose; such release was undoubtedly one of the objects, but rather incidental than main.

When the stockholders are once released they do not again become liable; and yet the penalities of the twenty-second section apply to a certificate of increase of capital required to be made by the twenty-first section. The first certificate set them free, the last could have no such object.

The act of 1846 wisely made the stockholders responsible till the capital fixed upon was paid in. It did not give the immunity of stockholders of a corporation until they had paid in the capital subscribed; until that time they were to be liable as partners. It designed to prevent the contraction of debts by the corporation, as such, until a capital was paid into the treasury.

Whether a corporation, under the law of 1849, can contract debts in its corporate capacity exempting the associates from the liability of partners before payment of its capital, may well be doubted: such a construction of the act is at war with its whole scope, and renders all its careful provisions requiring the certificate a nullity. The argument of defendants is, they may so commence business, therefore the certificate need never be filed; the answer is, they cannot so commence, else why require a certificate of the amount fixed upon with which to commence business? *Nix. Dig.* 456. Why require a certificate that it is paid in? why forbid the note or obligation of a stockholder, whether secured by pledge or otherwise, being considered as payment of any part of the capital stock? The argument rests upon a *petitio principii*, and is clearly unsound.

The imposition of the penalties for neglect of the certificate prove that, until that had been made, sworn to, recorded, and published, the legislature did not design to protect the stockholders from liability.

If the sound construction of the act of 1846 required the payment of the capital before the association could commence business, as such, then the nineteenth section of that act was merely declaratory.

The fact that the argument of defendants' counsel proves too much, demonstrates its unsoundness. Say they, the section of the act of 1846, imposing individual liability upon the stockholders, was designedly omitted with intent to change the whole construction of the act, the object of the certificate being to release the stockholders; that it is no longer required, and if false it creates no liability; and even if the certificate now has any object, it need not be filed at all, because the company may commence business, as such, before its capital is paid in according to the certificate of organization; and if so, the officers may escape all obligation and liability for a disregard of one provision of the act by disregarding another. The Serbonian bog, into which the argument leads the arguer, ought to satisfy him that he has lost his way. Such a construction of the act cannot be sound.

The obvious design of the certificate in question was to insure the public against the formation of bubble companies, with high-sounding names, under the patronage of prominent men, with empty treasuries, and to inform the public when a corporation under the act could with safety be trusted, and to do this by the publication of an authenticated statement of the payment of the cash capital into the treasury.

This was the main object of the provision, as it stood in the act of 1846, and stands in that of 1849. The omission to declare the stockholders liable by express provision does not render inoperative the nineteenth section of the act of 1849.

But it may be said, why compel the making of the certificate within thirty days after the payment of the last installment? The answer is obvious—to compel the payment to be made in cash. The public will not give credit to the company until the capital is paid in cash, and no publication can be made, unless false, until so paid.

It is true that if the fixed capital be not all paid in, the company may, by the *literal* terms of the act, do business

forever without making a certificate, and recording it; but if the public give them credit without requiring the evidence provided by law of the existence of a cash capital, it is at their own risk.

It might be a very proper requirement, that no business be done until the certificate is made as required. But the existence of this defect by no means renders the other provisions inoperative. Making the officers liable for imposing upon the public an untrue statement of the resources of the company, is a valuable safeguard to those dealing with them. If the statement be true, it is of great consequence in forming a judgment as to the trustworthiness of such a corporation. If the officers, through negligence or by corruption, furnish false information on a point so vital, it is no hardship to make them liable for all debts that may be contracted on the faith of such a statement, or that have been contracted while they were officers or stockholders. The immunity of the stockholders of a corporation is a special privilege not enjoyed by ordinary partners, and the officers having direction of its affairs have no cause of complaint if the law declares that a forfeit for the breach of the provisions of the contract between the corporation and the public, when that breach is caused by their own act.

The nineteenth section of the act of 1849 effects a valuable purpose, and ought not to be nullified or amputated as dead matter, except on the clearest grounds. Such do not exist in this case. This case shows its value.

The remaining question to be decided is, perhaps, one of more difficulty. Do the provisions of the thirtieth section apply to a certificate made in pursuance of the nineteenth section? Why should they not? The language is broad enough to reach it.

If *any* certificate made, or any public notice given by the officers of any company, in pursuance of the provisions of this act, shall be false in any material representation, all the officers who shall have signed the same

shall be jointly and severally liable for all the debts of the company contracted while they were stockholders or officers thereof. The object of the certificate is highly meritorious—to secure truth in the statements put forth by the company. The literal construction is in entire accordance with the whole policy of the act, either to give the creditors recourse to a cash capital paid in, or to the directors who carry on the operations of the company, or to the stockholders.

Why should the clear scope of the section be restrained? Is there any conflict between it and the twenty-first section? If so, which must yield? These are questions to be answered in reaching the solution of this case.

There is no necessary conflict. The penalty, by the twenty-first section, is liability for all debts contracted after the expiration of the thirty days until the recording of the certificate. This secures the making of a true certificate at the earliest moment; when that is recorded, having been made and published as the act requires, the officers are exempt from after-accruing liabilities. To attain this double object, the penalty must be such as to cease on compliance with the section. The penalty acts as a spur to compliance. The penalty of the thirtieth section obvious policy required to be severe, yet just, that is, absolute unconditional liability for all past debts of the company.

The privileges conferred by the act are conditional immunity from debts of the association. The thirtieth section justly forfeits this immunity for the deceit of the officers.

The two sections, construed together, provide a penalty for want of truth in the certificate made in pursuance of the nineteenth; of liability for all the past debts of the company, absolutely, and for the future debts liability up to the time of compliance with the provisions of the section. This construction is in accordance with the familiar principle that statutes are to be so construed that

one clause shall not frustrate and destroy another, but that they shall explain and support one another. *Hard.* 344; *Smith on Stat. Con.* 375. Sound exposition requires effect to be given to every significant clause, sentence, or word in a statute. *James* v. *Dubois*, 1 *Harr.* 285; *Den* v. *Schenck*, 3 *Halst.* 34; *Lott* v. *Wyckoff*, 1 *Barb. Sup. Ct. Rep.* 565.

When the words of a statute are susceptible of two meanings, the one favorable, and the other hostile to its principal design, the former should prevail and control the construction. Where the words are clear, and the difficulty is made by critical exposition, that exposition should not be adopted in clear contravention of the scope and policy of the act. Few statutes would stand if tried by the strictest standards of logic, grammar, or rhetoric.

There is no conflict between the twenty-first section and the thirtieth. The certificate under the nineteenth section is within the thirtieth section.

The motion must be denied. The plaintiffs are entitled to judgment on their verdict.

Green, C. J., concurred.

Vredenburgh, J., (dissenting.) The declaration in this case sets out that certain persons, on the 15th of July, 1853, became incorporated under the general manufacturing law, by the name of the Perry Patent Arm Company, and did certify " that the capital stock was $300,000, and to commence business with a capital of $288,000, and did in all things comply with the provisions of said act; that the corporation, in February, 1854, and while the defendants were stockholders and officers thereof, became indebted to the plaintiffs in the sum of $3000, which went to judgment in September, 1855; that the said defendants, as officers of said corporation, on the 9th of January, 1855, did, within thirty days after the payment of the last installment of the capital stock fixed upon as the

amount of stock with which they would commence business, make a certificate, as required in the act, by which the defendants did, under oath, certify that the amount of capital stock with which, by the original certificate of incorporation, it was declared that the said company would commence business was $288,000, and that the whole amount so fixed upon had been paid into the treasury of the company in cash, the last payment thereof having been made the 29th of December, 1854, and did in all things comply with the said act in making and giving publicity to the said certificate. And then the declaration avers that the capital stock of $288,000, so fixed upon as stated in said certificate, was not paid into the treasury of said company in cash, as in said certificate, and publication thereof, is certified, and that said certificate and notice are false in said material representations, by means whereof the defendants, as stockholders and officers of said company, became liable to the plaintiffs for the said debt of the said corporation. A verdict having been rendered for the plaintiffs, a motion is now made in arrest of judgment.

I think this declaration discloses no legal cause of action.

In the first place, it avers that, in July, 1853, the Perry Patent Arm Company was legally incorporated; that, in 1854, the corporation became indebted to the plaintiffs; that, in 1855, the defendants made this false certificate, by means whereof they became liable; so that this is a claim against the defendants, not as partners or as stockholders on account of any original credit given to them, or because of any scintilla of common law liability remaining in them notwithstanding the act of incorporation, but against them, as officers, for an act done by them long after the credit was given. The question whether their common law liability as partners has been taken away by the act of incorporation, does not arise. The plaintiffs' debt was created solely upon the credit of the

corporation, as such. For a long time after the debt was created, neither the stockholders nor the defendants, as officers, were individually liable. The claim is, that a year after the debt was created the defendants did an act which neither procured the credit, or did the plaintiffs any injury, but which, solely by force of the statute, made them personally responsible, not for their own debt, but for the debt of another. The plaintiffs cannot say that, in 1854, they trusted the corporation upon the credit that in 1855 the defendants would commit perjury. They could give credit upon no such speculation. If the defendants are liable at all, it is only because the statute has made them liable, as for a penalty, by matters subsequent, consequently their legal liability should be made clearly manifest.

In the next place, the declaration avers that the capital stock was three hundred thousand *dollars*, divided into shares of one hundred *dollars* each, and to commence business with a capital of two hundred and eighty-eight thousand *dollars ;* that the defendants, as officers, did, within thirty days after the payment of the last installment of the said capital stock of two hundred and eighty-eight thousand dollars, certify that the whole amount of said last-mentioned capital had been paid in, in cash, and then avers that the same had not been paid in, in cash, by means of which falsehood the defendants became liable.

This is plainly a contradiction in terms. It seeks to hold the defendants liable by averring—1st, that the said $288,000 was all paid in ; 2d, that the defendants then certified that it was all paid in, in cash ; and 3d, that it was not paid in, in cash.

Now is not the first proposition of precisely the same legal import and meaning as the second? It is an averment that the defendants had paid in two hundred and eighty-eight thousand what? horses, cattle, patents—no, but dollars. Are not dollars cash? Is not a dollar as much an object of sense as a steamboat or a locomotive? Does

not payment *ex vi termini* mean cash? Can there be any possible difference between saying, I paid into the treasury one thousand dollars, and I paid therein one thousand dollars in cash? If one should say he paid into the treasury $1000 in horses or patents, it would be equivalent to saying he did not put dollars or cash, but horses or patents into the treasury, which were of the value of $1000. So here, if the declaration had averred that the defendants paid into the treasury a patent of the value of $288,000, and then certified they had paid it in, in cash, there would have been a difference in the two propositions. But averring that they paid into the treasury two hundred and eighty-eight thousand dollars in cash, is in no way different from saying they paid in two hundred and eighty-eight thousand dollars, unless it can be shown that dollars may not be cash; that payment in dollars may not be payment in cash. Not only is this the necessary construction of this language, but the legislature, all through this act, nay, in the next preceding line in the very section under which it is sought to hold the defendants liable, have demonstrated that such was their idea of the meaning of the terms they were using. Thus the 19th section of the act of 1849 (*Nix. Dig.* 458) provides that the president and directors, with the secretary and treasurer, within thirty days after the payment of the last installment of the capital stock, (this it will be observed is the language of the declaration) shall make a certificate stating the amount of the capital so paid in cash. This is the first time the word cash is used in the act, and we must give significance to the word "so." How paid in cash? The answer can only be, so paid in cash as the act had previously prescribed, which was only in dollars, showing that the legislature could not have contemplated that a payment in cash could be anything different from the payment prescribed by the preceding portions of the act, otherwise they could not have said, so paid in cash.

But again, the words in the act, "in cash," mean either

the same thing as payment of the capital stock, or it means something different. If it means the same thing, it can be used only by way of emphasis. If it means a different thing, then the act authorizes the payment of the capital stock in something else besides cash, to wit, in cattle, patents, &c. But wherever or however the capital stock is paid in, in any way, in pursuance of the act, the officers are *compelled* by the act to certify under *oath* and under the penalty of being liable individually for future debts of the company, that the capital has been paid in, *in cash;* that is, when the capital has been paid in, in horses or patents, the officers must certify, under oath, that it has been paid in cash. Under this construction, the act commands the defendants to commit perjury under the penalty of becoming liable for all the future debts of the company. It is manifest, therefore, that the legislature used the words "so paid in cash" as synonymous with the kind of payment *previously* prescribed in the act. When, therefore, the declaration, pursuing the language of the act, avers that the capital stock has been paid in, the further averment that the defendants certified that it has been paid in, in cash, cannot, by possibility, be false. The declaration amounts to only this—1st, an averment that the capital stock was all paid in ; 2d, that the defendants then certified that it was all paid in ; and 3d, that it was not paid in ; and thus commits suicide upon its face, and shows no legal cause of action.

This is not a mere inadvertence in the pleader, but grows out of the exigencies of the case, and must always continue to exist, however the declaration may be framed, as long as it is sought to hold the defendants responsible as officers and by way of penalty. This will appear from a further consideration of the case.

Suppose the allegation that the capital stock had been paid, be stricken out, so that upon its face it would appear that the certificate could, by posssibility, be false, would the declaration then show a legal cause of action? It is evident that the pleader did not so think, otherwise

he would not have subjected his declaration to this criti-
cism.

If the declaration be so amended, then if the defend-
ants are responsible, it is conceded that it must be by vir-
tue of the 19th and 30th sections of the act of 1849.  *Nix.
Dig.* 458.

This 30th section provides that "if any certificate made,
or public notice given, by the officers of any company, in
pursuance of the provisions of this act, shall be false in any
material representation, all the officers who shall have signed
the same shall be jointly and severally liable for all the debts
of the company contracted while they were stockholders or
officers thereof."

It will be perceived that a certificate, to come within the
purview of this section, must have two qualifications—1st, it
must be made in pursuance of the act; 2d, it must be false
in some material representation.

It is conceded that the certificate now in question was in-
tended to be made in pursuance of the provisions of the 19th
section; and it is apparent that, if not made in pursuance of
the provisions of this section, it is not made in pursuance of
the provisions of any other.  This 19th section provides as
follows: "The president and directors, with the secretary
and treasurer of each company, within thirty days after the
payment of the last installment of the capital stock so fixed
and limited by the company, shall make a certificate stating
the amount of capital so fixed and paid in, in cash."  If
the certificate here in question is made in pursuance of
this 19th section, and is also false in some material repre-
sentation, it comes within the operation of the said 30th
section; but if it lacks either of these qualifications it does
not.

Now this 19th section commands that, *after* the capital
is paid in, the officers shall certify it is paid in, in cash.
A certificate made *after* the payment, is a certificate made
in pursuance of the act; but there is no command in the
section to make the certificate *before* it is paid in, and

Waters v. Quimby.

consequently a certificate *before* it is paid in cannot be made in pursuance of the provisions of the act. A certificate *before* payment is in pursuance of *no* provisions of the act. If it is so, in pursuance of what provision is it? can any one tell us?

A certificate in pursuance of the provisions of the act must be one that the act authorizes or requires to be made, otherwise it is a mere voluntary thing, upon which the 30th section cannot attach its penalties. If the officers make it before the capital is paid in, they simply do an act which they were under no obligation of law or duty to do, which was not commanded or required by the statute to be done, and which they could not do in pursuance of, on the following of the provisions of the statute. Their duty to certify, the command upon them to certify, their certificate in pursuance of the provisions of the act, could only arise and exist *after* the fact had happened, to wit, after the payment of the last installment of the capital stock. The only kind of certificate authorized and commanded by the 19th section is one to be made *after*, and not *before* the payment of the last installment, and therefore such certificate cannot by possibility be false. Falsehood cannot by possibility be predicated of a certificate made in pursuance of the provisions of the 19th section.

The penalties prescribed by the 30th section could never have been intended to embrace certificates made in pursuance of the 19th section, because a certificate under the 19th section can, upon the very condition of its existence, have only *one*, and cannot have *both* the qualifications required by the 30th section. It cannot, at the same time, be made in pursuance of the act, and at the same time be false. If made in pursuance of the provisions of the act it cannot be false, and if false it cannot be made in pursuance of the provisions of the act. This difficulty, it is apparent, was staring the pleader in the face when he was drawing his declaration. He saw it would not do

to show a certificate made *before* payment of the last installment, even if it was false, or a certificate *after* payment, unless it was false, so he averred parts of both. But the inevitable result of thus attempting to reconcile contradictions was, as we have seen, to force the declaration *se ipsum murdrare*.

But, again, it is manifest that the 30th section was not intended to include those certificates called for in the 19th section, from the fact that the 21st section of the act prescribes specifically what shall be the penalty for a false certificate under the 19th section.

It is the legal presumption that when the legislature, in one section of an act, prescribes a duty, and in connection with it enacts the next section solely for the purpose of prescribing a specific penalty for its false performance, that they did not intend a subsequent section, providing much more severe penalties generally applicable to other provisions of the act, and without specifying the particular section for which they had so specifically provided, should extend to such section so specifically provided for.

Again, a reference to the history of the act will show that the 30th section does not relate to certificates under the 19th section.

The 19th and 30th sections of the act are identical, respectively, with the 20th and 32d sections of the act of 1846. The 32d section of the act of 1846 was intended to protect creditors, while its 20th section was intended to protect, not creditors, but stockholders. The act of 1846 was a wise and well-considered law, protecting all interests carefully, while its characteristic feature was to enforce the payment of the capital stock for the security of creditors.

Thus, by the 19th section of the act of 1846, the stockholders, notwithstanding their incorporation, were still liable, as partners, for all the debts of the company, until all the capital they were to commence business with was

paid up: not only so, but if they made a new assessment upon their stock, or increased their capital stock, they thereby *ipso facto* again immediately became liable as partners, until every dollar of such additional stock was paid up: not only so, but were, after they had paid up their whole capital, whether original, or increased, or additional, still liable as partners, until the officers should have made and recorded such a certificate as we are now considering. But the officers might refuse or neglect to make or record such a certificate, and so the stockholders still remain liable as partners, notwithstanding they had paid up all their capital stock.

It was to relieve the stockholders in this regard, and not to secure creditors, that the 20th and 22d sections of the act of 1846, corresponding to sections 19 and 21 in the act of 1849, were incorporated in the act of 1846. They were intended to provide a punishment for the officers for neglecting to relieve the stockholders after all the capital was paid in, by certifying the fact of such payment.

In the 22d section of the act of 1846, a penalty was prescribed for neglect to make the certificate after payment, because refusing to certify was the only way in which the officers could injure the stockholders; but no penalty was therein provided for the certificate being false, for two very obvious reasons—1st, because such certificate could not by possibility be false; 2d, because, if the certificate was made before the payment, it could not benefit or injure the stockholders. Their liability, notwithstanding such a certificate, would have remained as before, and until the whole capital was in fact paid up; nor could the certificate being false, or made before the capital was paid up, injure the creditors, because if false the creditors held not only all the property of the corporation, but also the personal responsibility of all the stockholders, whereas if the certificate was true, they could only hold the property of the corporation; so that, so far

as this certificate under the act of 1846 was concerned, all the *creditors* had to fear was not that the certificate should be *false*, but that it should be *true*. It is not to be presumed that the legislature, in the 32d section of the act of 1846, corresponding to the 30th section of the act of 1849, in providing in the interest of creditors for acts which might injure them, intended to make the officers responsible for an act which could only benefit them. It is obvious, from the whole purview of the act of 1846, that the legislature, in the 20th and 22d sections of that act, were throwing guards around, not the creditors, but the stockholders, after they had paid up all their stock, and were not then contemplating the interest of the creditors.

But the act of 1849 was a very different affair from the act of 1846. It seems to have been contrived for the sole purpose of emasculating the act of 1846 of all power to protect creditors. This was accomplished by passing the same act over again, only quietly dropping out of it its 19th section, and introducing a few immaterial alterations in some other sections by way of diverting the attention of the legislature from the real object. Under the act of 1849, I do not see why persons may not become incorporated without paying in a cent of the capital; they have certified they will commence business with, or of any of the capital afterwards called in, and that without assuming any responsibility as partners. The act of 1849, indeed, gravely retains the section requiring the officers to certify *after* all the stock is paid in, and creates a penalty for not doing so the same as before, but provides no means for compelling the stockholders to pay in a single dollar. As the capital, under the act of 1849, need never be paid in, the officers can never be compelled to certify; and if they do happen so to do under a mistake of their legal duties, as it is apparent was the case here, it is a mere voluntary act, for which they incur no legal responsibility. When the act of 1849 dropped, the 19th section

of the act of 1846, the 19th and 21st sections of the act of 1849 became mere dead matter, and should have been amputated from the body of the act. They belonged to and had no vitality, except as connected with the 19th section of the act of 1846, and should have been buried with it. There was nothing in the act of 1849 upon which they could operate. If it had simply been proposed to repeal the 19th section of the act of 1846, it is doubtful if it would have got a vote in either branch of the legislature; if more than one section had been dropped, it might have led to inquiry, but only dropping this 19th section, it would appear to have passed *sub silentio.* One member, indeed, seems to have been struck with some kind of vagrant instinct that there was something wrong somewhere. He became alarmed, not that the stockholders should not pay in their capital stock, but lest, after it was all paid up, the creditors should be cheated by the officers falsely certifying that it had been paid up. So he interpolated, in the 21st section, a special provision against that calamity.

It is somewhat amusing to see how the legislature, in attempting to create a penalty for falsity in a certificate, which by the very supposition upon which it was made could not by possibility be false, found themselves involved in the same contradictions that the plaintiffs did in framing their declaration. The 22d section of the act of 1846 provides that if any of the said officers shall neglect or refuse to perform the duties required of them in the 20th section of the same act, they shall be jointly and severally liable for all debts of the company contracted after the expiration of said thirty days and before such certificate shall be recorded. As the office of this section in the act of 1846 was to compel the officers, after all the stock was paid in, to file the certificate of that fact, so as to relieve the stockholders from longer responsibility, when the act of 1849, by dropping out the 19th section of the act of 1846, relieved the stockholders from all respon-

sibility. Whether the capital was paid in or not, the said 22d section was of no further use. Still it was left in the act of 1849, some one interpolating in it, however, these words, " or the certificate made by them shall be untrue," so that the section now reads, if after the whole stock has been paid in, the officers shall falsely certify that it has been paid in, they shall be liable for all debts contracted after it has been paid in, and before such certificate shall be recorded.

Is it possible to compress a greater number of contradictions in the same space ? After it is paid in, how can it be false to certify that it is paid in, and what is the penalty prescribed ? Why, that the officers shall be liable for.all debts contracted after it is paid in. But as the complaint is that the capital has not been paid in at all, how can any debts be contracted after it is paid in ? In severe sequence, as just as it is logical, by way of punishing the officers for falsehood which could never be committed, they are made liable for debts which could never be contracted.

The mere striking the 19th section out of the act of 1846, and retaining its other provisions in the act of 1849, raised no presumption that the legislature intended that the 30th section of the act of 1849 should apply to any more sections in the act of 1849, or have any broader application than it had in the act of 1846, and more especially not to the 19th section of the act of 1849, as the penalty for the violation of that section is specifically provided for in the 21st section.

I am of opinion that the certificates and notices named in the 19th section of the act of 1849 are not embraced within the provisions of the 30th section, and that judgment must be arrested.

AFFIRMED, 4 *Dutch.* 533.